# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| RANDOLPH PENTEL, KIM POVOLNY, MICHELLE POVOLNY, MICHAEL POVOLNY, | Case No. 18-CV-1447 (NEB/TNL) |
| Plaintiffs, | ORDER ACCEPTING REPORT AND RECOMMENDATION |
| v. | |
| MICHAEL SHEPARD and CITY OF MENDOTA HEIGHTS, | |
| Defendants. | |

Michelle Povolny and Kim Povolny (the "Settling Plaintiffs") seek $60,258.50 in attorneys' fees and $264.76 in costs under 18 U.S.C. § 2724. [ECF No. 66 (the "Motion"); *see also* ECF No. 96 ("Pls' Obj.") at 1–2.] In a Report and Recommendation [ECF No. 95 ("R&R")], United States Magistrate Judge Tony N. Leung recommended that the Motion be granted in part and denied in part. The Settling Plaintiffs filed an objection to the R&R. (Pls' Obj.) The City of Mendota Heights and Michael Shepard (the "Defendants") filed a joint response to that objection. [ECF No. 97.] For the reasons set forth below, the Court overrules the Settling Plaintiffs' objections and accepts the R&R as modified.

## BACKGROUND

Together with Randolph Pentel and Michael Povolny (the "Non-Settling Plaintiffs"), the Settling Plaintiffs brought this putative class action against the

Defendants for alleged violations of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721 et seq., and the Minnesota Government Data Practices Act ("MGDPA"), Minn. Stat. § 13.01 et seq. The Settling Plaintiffs claimed that Shepard, a police officer, wrongfully accessed their driver's license information. [*See generally* ECF No. 1.] On March 15, 2019, the Defendants served offers of judgment on the Settling Plaintiffs under Rule 68 of the Federal Rules of Civil Procedure. [*See* ECF Nos. 46, 47, 50 and 51.] The Settling Plaintiffs accepted those offers on April 1, 2019. [*See* ECF Nos. 31, 32, 52 and 53.] According to the terms of the offers, each Defendant agreed to pay each Settling Plaintiff $2,550. [ECF Nos. 46, 47, 50, 51.] The Defendants also agreed that the Settling Plaintiffs could petition the Court for an award of reasonable costs and attorneys' fees. (*Id.*)

After the Settling Plaintiffs' acceptance of the Rule 68 offers in April 2019, the Non-Settling Plaintiffs have continued to litigate their own claims and those of the remaining members of the putative class. The Court has yet to issue a final judgment on the Non-Settling Plaintiffs' claims or those they assert on behalf of the putative class.

On June 12, 2019, the Settling Plaintiffs filed their Motion, then seeking $60,475 in attorneys' fees and $264.76 in costs. [*See* ECF No. 67 at 2.] The Defendants jointly opposed the request. [*See* ECF No. 81.] The R&R agrees that the fees sought are unreasonable and recommends that they be reduced. (*See* R&R at 10.) Although the Settling Plaintiffs agree that the requested $60,475 inadvertently included $216.50 for time spent on the Non-

Settling Plaintiffs' claims, they object to the R&R on various other grounds, maintaining that they are entitled to the remaining $60,258.50. (*See* Pls' Obj. at 1–2.)

## DISCUSSION

### I. Standard of Review

Parties may "file specific written objections to [a magistrate judge's] proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. L.R. 72.1(b). "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections." *Mayer v. Walvatne*, 07-CV-1958 (JRT/RLE), 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008).

For dispositive motions, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *accord* 28 U.S.C. § 636(b)(1). Because a motion for attorneys' fees is a dispositive motion, this Court reviews *de novo* the portions of the R&R to which the Settling Plaintiffs object. *See Myers. v. Aitkin Cty.*, 14-CV-473 (JRT/LIB), 2017 WL 1134575, at *2 (Mar. 27, 2017).

### II. Analysis

Under the DPPA, courts "may award 'reasonable attorneys' fees and other litigation costs reasonably incurred.'" *Orduno v. Pietrzak*, 932 F.3d 710, 719 (8th Cir. 2019) ("*Orduno II*") (quoting 18 U.S.C. § 2724(b)(3)). "The party seeking fees bears the burden

3

of establishing entitlement to an award and documenting the appropriate hours and hourly rates." *Id.* at 719–20. "The starting point for determining attorneys' fees is the 'lodestar,' which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rate." *Id.* at 719.

The Settling Plaintiffs assert that they are entitled to $60,258.50 in view of the 154.6 hours expended and the hourly rates charged by the timekeepers working on this case. The R&R recommends that: (1) the Court exclude 34.225 hours relating to class issues; (2) the Court reduce by 40 percent the time each timekeeper spent on preparing the complaint, preparing the Rule 26(f) report, drafting discovery requests, drafting discovery responses, and time spent on clerical tasks; (3) the Court adjust the hourly rates charged by each timekeeper to correspond to the hourly rates charged in other DPPA cases brought in this district; (4) the Court reduce the resulting figure by another 20 percent to reflect the Settling Plaintiffs' partial success in this matter. (R&R at 10.) The Settling Plaintiffs object to each of these adjustments.[1] For the reasons stated below, the Court overrules each of the Settling Plaintiffs' objections to these adjustments.

---

[1] As noted above, the R&R also recommends excluding the 1.35 hours spent on the Non-Settling Plaintiffs' claims that were inadvertently included in the Settling Plaintiffs' submissions, and the Settling Plaintiffs do not object to this adjustment. Accordingly, the Court accepts the R&R's recommendation that these 1.35 hours be excluded. And because no one disputes that awarding the Settling Plaintiffs $264.76 in costs is reasonable, the Court also accepts the R&R's recommendation that the Settling Plaintiffs be awarded $264.76 in costs.

### A. *Excluding 34.255 Hours Relating to Class Issues*

"[T]he fee award must be justified by the plaintiff's level of success." *Emery v. Hunt*, 272 F.3d 1042, 1047 (8th Cir. 2001). Indeed, "the degree of success obtained" is "the most critical factor" courts consider when awarding attorneys' fees. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *accord Fires v. Heber Springs Sch. Dist.*, 565 F. App'x 573, 575 (8th Cir. 2014).

The R&R concludes that it would be premature to award fees for time spent litigating claims asserted on behalf of the putative class because the degree of success of these claims is not yet known. (R&R at 7–8.) It accordingly recommends that the 34.225 hours spent on these issues be excluded from the lodestar calculation. (*Id.*)

The Settling Plaintiffs do not dispute that claims asserted on behalf of the putative class are still pending in this case. (*See, e.g.*, Pls' Obj. at 11.) Nor do they dispute the R&R's determination that 34.225 hours, specifically, relate to class issues. (*See id.*) Rather, they argue that "it was reasonably necessary to spend time on [class-related issues] before those claims were resolved as to" the Settling Plaintiffs. (*Id.*)

The Court finds no merit in the Settling Plaintiffs' argument that it would be proper to award attorneys' fees for time spent litigating claims asserted on behalf of the putative class at this stage of the litigation. Even the Settling Plaintiffs do not dispute that it is too early to ascertain whether those claims will be successful. Thus, it would be unreasonable to award attorneys' fees for time expended class-related issues at this time.

5

The Court excludes the 34.225 hours spent on class-related issues from the lodestar calculation.

B.     *The 40% Reduction for Overstaffing and Overbilling*

In *Orduno II*, the Eighth Circuit instructed district courts to "be mindful of both 'redundant' and 'excessive' hours" when awarding attorneys' fees. *Orduno II*, 932 F.3d at 720.

The R&R recommends that time spent on certain tasks be reduced by 40 percent because excessive time and resources were spent on those items. (R&R at 8–9.) Specifically, it recommended a 40 percent reduction in the hours spent on: (1) drafting the complaint; (2) preparing the Rule 26(f) report; (3) drafting discovery requests; (4) drafting discovery responses; and (5) clerical and secretarial work. (*See id.* at 8–10.) The R&R reasons that there were many inefficiencies in the work performed on these tasks and those inefficiencies were similar to the ones that plagued *Orduno v. Pietzrak*, No. 14-CV-1393 (D. Minn.). (*See id.*). Due to those similarities, it suggested that the 40 percent reduction applied in *Orduno* for excessive billing and overstaffing also be applied here. (*See id.* at 9–10.)

The Settling Plaintiffs object to the 40 percent reduction of time spent on these tasks, arguing:

> This case is not like the *Orduno* matter the Magistrate [Judge] relies on as it involved only one of the same law firms, did not involve a motion to dismiss, the class certification issue has yet to be considered, the MGDPA

> is pled here, and the factually more complicated and difficult-to-discern BCA and LEMS audits have led to more challenging discovery issues.

(Pls' Obj. at 13–14.)

The Court does not find the Settling Plaintiffs' attempts to distinguish *Orduno* persuasive. First, that the Eighth Circuit upheld a 40 percent reduction of the fees submitted for work performed by four of the same attorneys from Sapientia Law Group, PLLC ("Sapientia"), merely highlights that, in light of their personal experience, it is reasonable to expect these attorneys to litigate DPPA cases efficiently. *See* Affidavit of Sonia Miller-Van Oort, *Orduno v. Pietrzak*, 14-CV-1393 (ADM/DTS) (D. Minn. June 9, 2017), ECF No. 236 (explaining fees submitted included work performed by Larry Fett, Jon Strauss, Sonia Miller-Van Oort, and Robin Wolpert).

Second, while this case differs from *Orduno* in that (1) the complaint filed here asserted claims under the MDGPA and (2) the Defendants here did not seek dismissal of the claims brought against them, in the Court's view the 31.8 hours that five different attorneys spent on drafting the complaint was nonetheless excessive. The same four attorneys from Sapientia often litigate DPPA cases in this District and therefore frequently confront the DPPA questions raised in such cases. *See, e.g.*, *Orduno v. Pietrzak*, 14-CV-1393 (ADM/DTS) (D. Minn.) (noticing appearances from Strauss, Fett, Wolpert, and Miller-Van Oort); *Myers v. Aitkin Cty.*, No. 14-CV-473 (JRT/LIB) (D. Minn.) (same); *Krekelberg v. Anoka Cnty.*, No. 13-CV-3562 (DWF/TNL) (D. Minn.) (same). But the hours and staffing do not reflect gains in efficiency due to increasing familiarity with DPPA

cases: five timekeepers billed 34.65 hours to draft the complaint in *Orduno* (filed in May of 2014, *see Orduno v. Pietrzak*, 14-CV-1393 (ADM/DTS), 2017 WL 4354686, at *13 (D. Minn. Sept. 29, 2017) ("*Orduno I*") and five timekeepers billed 31.8 hours to draft the complaint here (filed four years later in May of 2018, *see* ECF No. 1). And in the Court's view, adding an MGDPA cause of action—the only notable difference between this action and *Orduno*—should not entirely offset any efficiency gained from the additional years of experience and decisions clarifying recurring legal issues in DPPA cases. In other words, if only 20.79 hours (the 34.65 hours billed reduced by 40 percent) were reasonably required to draft the complaint filed four years ago in *Orduno*, with the benefit of four years of experience litigating DPPA cases and decisions clarifying the legal issues raised in such cases, the attorneys and paralegal representing the Settling Plaintiffs could reasonably be expected to spend no more than 19.08 hours drafting the complaint asserting DPPA and MGDPA claims filed here.

Finally, the Court is not convinced that the number of timekeepers (up to four, depending on the task) and hours (30.45) spent on discovery issues is reasonable. Discovery in this case required counsel for the Settling Plaintiffs to contend with the BCA and LEMS databases.[2] *Orduno* did not. Admittedly, due to the posture of this case, the Court's insight into discovery issues is limited to the issues raised in connection with the

---

[2] For an explanation of these terms and their relevance to this litigation, the Court refers to the Order of Judge Leung dated August 7, 2019. [*See* ECF No. 90.]

8

Non-Settling Plaintiffs' motion to compel discovery. [*See* ECF No. 33.] But based on that limited insight, it does not appear that obtaining and reviewing the BCA and LEMS audits required much of counsel for the Settling Plaintiffs. The attorneys from Sapientia have grappled with the BCA database in similar DPPA suits. *See, e.g.*, *Rollins v. City of Albert Lea*, No. 14-CV-299 (SRN/HB), 2016 WL 6818940, at *17 (D. Minn. Nov. 17, 2016). The Court would therefore expect them to be familiar with drafting discovery requests for and interpreting BCA data and to instruct paralegals to efficiently assist with any related tasks. As for the LEMS audits, the submissions filed in support of the Non-Settling Plaintiffs' motion contend that the LEMS audit reports produced were simply too opaque to permit any meaningful review. [*See, e.g.*, ECF No. 35 at 4–5.] Surely, not much time is needed to conclude that such opaque audit reports cannot provide useful information. In these circumstances, the Court agrees with the R&R that the hours expended on discovery issues were excessive.

At bottom, the Court agrees with the R&R that, like *Orduno*, this case involves issues that are neither factually nor legally complex. *See Orduno I*, 2017 WL 4354686, at *13. Factually, it focuses narrowly on the frequency and circumstances of one individual's accesses of driver's license information. And, as this case follows years of DPPA litigation in this District, the legal issues it raises are banal. In these circumstances, the Court agrees with the R&R that the following entries indicate overstaffing that resulted in excessive and redundant hours: preparing the complaint (five timekeepers, 31.8 hours); preparing

the Rule 26(f) report (two timekeepers, 8.3 hours); drafting discovery requests (three timekeepers, 12.7 hours); drafting discovery responses (four timekeepers, 9.45 hours), clerical and secretarial work (two timekeepers, 1.65 hours).[3] While some of these entries include tasks that were properly assigned to a paralegal, the Court does not believe the time spent on those tasks reflects the efficiency it expects from a paralegal instructed by attorneys with years of experience litigating DPPA cases. Thus, the Court reduces the time spent on these tasks by 40 percent.

C.  *Adjusting the Timekeepers' Hourly Rates*

"To determine whether an hourly rate is reasonable, the Court looks to the rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Orduno I*, 2017 WL 4354686, at *13 (quoting *Blum v Stenson*, 465 U.S. 886, 895 n.11 (1984)).

The R&R recommends that the hourly rates used in the lodestar calculation "be adjusted to reflect what [the Settling Plaintiffs' counsel] charged in similar cases." (R&R at 4.) In those cases, the following rates were approved: (1) $400 per hour for Strauss, Miller-Van Oort, and Wolpert; (2) $450 per hour for Fett; and (3) $100 per hour for Sapientia's paralegal. (*See id.* at 4 (citing *Orduno I*, 2017 WL 4354686, at *13; *Taylor v. City*

---

[3] The Settling Plaintiffs do not dispute that the R&R's calculation of the time spent on these tasks is accurate. The Court notes that it modifies the R&R to the extent that the R&R mistakenly reduced the time spent on clerical and secretarial tasks by 60 percent, not 40 percent.

*of Amboy*, No. 14-CV-722 (PJS/TNL), 2017 WL 4075163, at *2 (D. Minn. Sept. 14, 2017); *Myers v. Aitkin Cnty.*, No. 14-CV-473 (JRT/LIB), 2016 WL 11186989, at *3–4 (D. Minn. Nov. 30, 2016))). The R&R then concludes that, as there is no indication that Firth's knowledge and experience exceed those of Strauss, Miller-Van Oort, and Wolpert, his hourly rate should also be adjusted to $400. (R&R at 5.)

The Settling Plaintiffs object, seeking: (1) $450 per hour for Miller-Van Oort, Strauss, and Firth; (2) $475 for Fett; (3) $425 for Wolpert; and (4) $110 for Sapientia's paralegal. They contend that they are entitled to these rates because Defendants have not offered any expert testimony stating that these rates are unreasonable and because they "are not locked into maintaining the same hourly rates for seven years." (Pls' Obj. at 12–13.)

It is the Court's view that the hourly rates used in the lodestar calculation should be the same as in other DPPA cases litigated by the same counsel, and it is not persuaded by the Settling Plaintiffs' arguments to the contrary. It is the Settling Plaintiffs' burden to show that they are entitled to their proposed rates, *see Orduno II*, 932 F.3d at 719–20, and district courts "may also rely on [their] own experience and knowledge of prevailing market rates" to determine whether they have met that burden, *see Orduno I*, 2017 WL 4354686, at *13. No expert affidavits from the Defendants are necessary for the Court to conclude that the hourly rates sought by the Settling Plaintiffs are unreasonable based on counsel's skill and experience and the Court's knowledge and experience of prevailing

market rates. The Court's conclusion is bolstered by the undisputed fact that the same counsel were awarded lower rates in the many comparable cases they have litigated in this District. *See* R&R at 4 (collecting cases awarding lower fees to counsel); *Orduno I*, 2017 WL 4354686, at *13 (same); *see also Lamberson v. Bank of Am. Corp.*, No. 11-CV-335 (ADM/TNL), 2012 WL 4129807, at *3 (D. Minn. Sept. 19, 2012) (reducing hourly rates charged by counsel in light of fee awards calculated using lower hourly rates in other cases).[4] It sees no basis for increasing counsel's rates in this particular case.

D.     *The 20% Reduction for Partial Success*

As noted above, the degree of success obtained is a critical factor in determining a reasonable award of attorneys' fees. Courts may therefore reduce fee awards to reflect a plaintiff's limited success. *See Hensley*, 461 U.S. at 436 ("If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.").

The R&R recommends that the fees awarded be reduced another 20 percent in light of the Settling Plaintiffs' limited success on their claims. (*See* R&R at 6–7.) It reasoned that each Settling Plaintiff recovered only $2,550 from each Defendant (that is, $5,100 each) and in so doing recovered little more than the liquidated damages provision of the

---

[4] The Court finds the Settling Plaintiffs' attempts to distinguish *Lamberson* unavailing. (*See* Pls' Obj. at 13.) As the *Lamberson* court reduced the rates of both an attorney that had been suspended and an attorney that had not, *see Lamberson*, 2012 WL 4129807, at *3–4, its reasoning is persuasive even though none of the Settling Plaintiffs' attorneys have been suspended.

12

DPPA for a single unauthorized access. (*Id.*) The R&R also notes that the amount recovered was also far less than the $100,000 in liquidated, actual, and compensatory damages sought in the complaint. (*Id.* at 6.) Concluding that the Settling Plaintiffs were only partially successful, the R&R recommends that the fees be reduced another 20 percent. (*Id.* at 7.)

The Settling Plaintiffs object, arguing that the R&R ignores the degree of success in this matter because each Settling Plaintiff recovered "more than twice the amount of statutory liquidated damages." (Pls' Obj. at 9.) And they contend that the amount claimed in the complaint "is not the correct point of analysis and comparison." (*Id.* at 10.)

The Court does not find the Settling Plaintiffs' arguments persuasive. In *Orduno*, the Eighth Circuit affirmed a 20 percent reduction for limited success even though the plaintiff recovered $15,000 in liquidated damages. *See Orduno II*, 932 F.3d at 720. It noted that the plaintiff had requested more than $1,000,000. *Id.* The Settling Plaintiffs have obtained only $5,100 in liquidated damages each after seeking $100,000 and cannot be considered more successful. It is the Court's view that a 20 percent reduction in light of the Settling Plaintiffs' partial success is warranted here.

## CONCLUSION

Based upon all the files, records, and proceedings in the above-captioned matter, IT IS HEREBY ORDERED THAT:

1. The Report and Recommendation [ECF No. 95] is ACCEPTED AS MODIFIED;

2. The Settling Plaintiffs' motion for reasonable attorneys' fees and costs [ECF No. 66] is GRANTED IN PART AND DENIED IN PART;

3. The Settling Plaintiffs are awarded $25,247.60 in attorneys' fees and $264.76 in costs against Defendants the City of Mendota Heights and Michael Shepard.

4. Defendants the City of Mendota Heights and Michael Shepard are hereby ORDERED to remit to the Settling Plaintiffs $25,247.60 in attorneys' fees and $264.76 in costs.

Dated: December 20, 2019

BY THE COURT:

s/Nancy E. Brasel
Nancy E. Brasel
United States District Judge